## SEPARATE PROPERTY AND LIFE ESTATE OF WIDOW.

[Circuit Court of Lorain County.]

BURT MOORE ET AL v. JOSEPHINE IDLOR ET AL.

Decided, April 29, 1904.

1. Where property is bequeathed to a widow by her husband for life, "with power and authority to sell, transfer and assign the whole or any part thereof, if necessary, for her support, and she waives her right of dower and elects to take under the will, it is not necessary that she exhaust her separate property or reach a condition of actual want before she can draw upon the *corpus* of the estate.

2. Under a provision of the will in this case the widow was given the privilege of disposing of a specified amount at her death, but the amount remaining to the estate at her death proved insufficient to permit of the carrying out of this provision, and the payment also of bequests made by the husband to children and grandchildren. *Held:* That the children and grandchildren take under a subsequent clause providing that the sum remaining be divided *pro rata* among them.

3. The probate court has original and exclusive jurisdiction over an application for a first year's allowance to a widow.

4. A life tenant holds somewhat as a trustee, and the relation of debtor and creditor does not exist between him and the remaindermen as such.

5. The statute of limitations is not applicable to a continuing trust.

MARVIN, J. (orally); HALE, J., and WINCH, J., concur.

The case of Burt Moore, Emma Gorham and William Idlor against Josephine Idlor and others, comes into this court by appeal from the court of common pleas.

The facts are, that on May 15, 1878, Amandar Moore, a resident of Lorain county, Ohio, died testate, leaving a considerable estate. He left a widow, Charlotte Moore, who lived for about eighteen years after the death of her husband. The plaintiffs, Burt Moore, Emma Gorham and the defendant, Josephine Idlor, are the only children of said testator who survived him, and they together with the plaintiff William Idlor, who is his grandson, are the only beneficiaries under his will who have any interest in the subject-matter in this controversy.

The first item of the will of said testator is as follows:

"Item 1. After all my lawful debts are paid, I give and devise unto my beloved wife, Charlotte Moore, my farm situated in Avon township, Lorain county, Ohio, in section eighteen, containing about twenty-five acres. I also give and devise unto her, two promissory notes, given to me by my brother Charles Moore, one for $1,200 and the other for $46 with all interest which may be due on them at the time of my decease, which noes are secured by mortgage on his home farm in Sheffield township, which mortgage I also give and devise to her. I also give and devise unto her two notes given to me by William Kramer, for $500 each, secured by mortgage, on part of lot No. 4 South Bass Island, Lake Erie, with the interest due thereon at my decease. Also one note given to me by M. R. Moore and Leonard Moore for $500 and the interest due thereon at my decease. All of the above property I give and devise to my said wife, Charlotte Moore, during the term of her natural life, with the power and authority to sell, transfer and assign the whole or any part thereof, if necessary, for her support, and execute and deliver a deed or deeds in fee simple to the purchaser or purchasers of said twenty-five acres in section eighteen, Avon. If, at the death of my said wife, and of said property, or enough thereof, remains undisposed of, I give and devise the same as follows: Two thousand dollars to be disposed of by my said

wife by will or otherwise, absolutely as she may see fit; $1,000 to my daughter, Emma Gorham, now in California; $1,000 to my son, Burt Moore; $1,000 to my daughter, Josephine Idlor; $500 to my grandson, William Idlor.

"If at the decease of my said wife there should not remain undisposed of by her the sum of $3,500, then the same or what remains thereof is to be divided *pro rata* between my said daughters, Emma and Josephine, my son Burt, and grandson William Idlor, or to their heirs respectively. All of the above mentioned and described property, real and personal, devised to my said wife, is given and devised to her in lieu of her dower right in my estate. I also give and devise to my said wife, and of my household goods and furniture of every kind and description to be hers absolutely."

Said widow elected to accept the provisions of this will. The executors of the said will in the settlement of the estate delivered to said Charlotte the personal property, except as hereinafter mentioned, which was bequeathed to her and took her receipt therefor; filed their accounts in the probate court claiming credit for the property so delivered to and receipted for by her, and their accounts were approved.

The exception as to delivering to her the property so bequeathed to her is, that instead of delivering to her the $500 note against M. R. Moore and Leonard Moore given to her by the terms of the will, they delivered to her in lieu of said note a United States government bond for $500. This is shown by her receipt therefor and by the accounts filed by the executors in the probate court. So that there came into the hands of said Charlotte from her husband's personal estate notes given by Charles Moore amounting to $1,200; notes given by William Kramer amounting to $1,000; and the United States government bond for $500. These notes were all secured by mortgage, and were all collected by her or for her; she had also the use of the twenty-five acres of land from the time of her husband's death.

Mrs. Moore had property of her own, $8,000 or more, independent of her husband's at the time of his death, which she continued to own until her death.

Charlotte Moore died testate in 1895; her will reads as follows:

"I, Charlotte Moore, declare the following to be my will.

"Item 1.  I give to Jay Idlor, of Put-in-Bay, and to Bertie Moore, of California, each the sum of $100.

"Item 2.  All the balance of my estate real and personal I give and bequeath to Nettie Hecock, daughter of Isaac Hecock, deceased; Hattie Hecock, daughter of Sarah Woodruff, deceased; Kate Miller, daughter of Catherine Miller, deceased; Mary Day and Karl Day, widow and son respectively of Eugene I. Day, deceased, and to all of my nieces and nephews of my blood to share and share alike, save and except that said Mary Day and Karl Day shall together receive only an equal share with said other named parties who are to share and share alike as stated.  I name Sumner Day as executor of this will. He shall have full power without order of court therefor to sell my real estate and deed to purchasers to make in fee simple. He need give no bond."

The defendant, Sumner Day, duly qualified as executor of such will, and took possession of all the personal estate of which Charlotte Moore was possessed at her death, and proceeded to administer upon the same as her property.  He also took possession of the twenty-five acre farm.

The only item of personal property which came into his possession in kind as it came from the estate of Amandar Moore was the $500 bond.  It is true that the evidence is not such as to make it absolutely certain that the $500 United States government bond, which was in the possession of Charlotte at her death, was the $500 bond which she received from the executors of the will of Amandar Moore.  Mr. Day thinks that she had this bond prior to her husband's death; but it is certain that she received a $500 United States bond from the executors of the will of her husband, and as a part of his estate.  It was said in argument—attention was called in argument to the fact—that the inventory filed by the executors of the will of Amandar Moore did not show such bond.  Schedule D, which was read to us, does not, but the inventory shows that there were United States bonds owned by him and a part of his estate, and the receipt of Charlotte to the executors of Amandar Moore show that in lieu of the $500 note against M. R. Moore and Leonard Moore, she accepted a government bond which was not in terms bequeathed to her.  So we find as a fact, that the bond which

was in her possession at the time of her death was the same bond which came to her from the executors of the will of Amandar Moore. No other personal property, which was by the will of Amandar Moore given to her was in her possession in kind at the time of her death. The notes against Kramer and against the other parties named, either were collected by or were collected for her.

There was some claim made that $1,000 collected upon these notes, two of them, never was paid to her, but the evidence did not show that. The notes were all secured by mortgage, and so far as we can determine from this evidence were all paid, so that she became possessed of the avails of these notes when she parted with them.

It is urged on behalf of the plaintiffs, that since by the terms of the will of Amandar Moore, the right to sell and dispose of the property which she took under the will of Amandar, could only be exercised in case it became necessary for her support, the language being: "All of the above property, I give and devise to my said wife Charlotte Moore, during the term of her natural life, with the power and authority to sell, transfer and assign the whole or any part thereof, if necessary, for her support." It is urged that because she had property of her own sufficient to have provided for her support—not necessarily the income of it, for it is shown that she was a considerable part of the time in such circumstances and in such state of health that she required assistance; but that in any event, whether the income of her own property, together with the income of the property left by Amandar Moore was sufficient for her support, she was bound to have used her own property, a part of it if necessary, for her support before she could avail herself of any part of the principal of the property left by Amandar.

In support of that we are cited to the case of *Hull* v. *Culver*, 34 Conn., 403, and the language used in that opinion goes very far toward supporting the proposition urged here by the plaintiffs.

It should be said here, that the will executed by the wife and providing for the support of her surviving husband, provided

in these words: "I give all my estate to my beloved husband, to use during his natural life, and if he should want for his support to sell any part or the whole of it for his maintenance, my will is that it shall be at his disposal." The court held that the word "want" meant "need;" and said that before he could make sale of that propety there must be an actual need; and in discussing that proposition the court used this language, page 405:

"The defendant however urges, certainly not without plausibility, that the husband was to be the sole judge of his necessity. But as we understand it, the contingency was to be his actual need and not his expectations or opinion of it. The authorities on this point seem to be conclusive." Citing 1 Hilliard Real Prop., Chap. 57, Section 9, which we have not examined; *Minot* v. *Prescott*, 14 Mass., 96; *Stevens* v. *Winship*, 18 Mass. (1 Pick.), 318, and *Larned* v. *Bridge*, 34 Mass. (17 Pick.), 339, which we have examined.

Without stopping to read from those cases, the cases do not, it seems to us, support the proposition which they are here cited to support, if the proposition is to be taken as meaning that the husband must have been in danger of actual want from all sources before he could make a sale of any of the property which it was provided in the will of his wife he might make sale of if it became necessary for his support.

The other cases are where, by the language of the will it is clear, the support was to be out of the property bequeathed.

There is this difference also to be noted. As a proposition of law it is the business of the husband to support his wife; it is the business of the husband to make provisions for the support of his wife after his death, and if he fails to do it, the law makes a provision for her.

It is true the law makes a provision for a surviving husband; but it is not in the same sense the business of the wife to provide for the support of the husband that it is the business of the husband to provide for the support of his wife.

The will which we are considering provides, in terms, that that which is bequeathed to the widow shall be in lieu of her dower. The inventory of the estate of Amandar Moore and the settle-

ment of the account show that his was quite a large estate. If this widow had rejected this will, she would have received much more in value than she received under the provisions of the will, and she parted with a very valuable right when she consented to accept the provisions of this will. It would seem inequitable that she should be required before she could get anything more than the income of the little twenty-five acre farm and of about $2,700 of personalty, she should exhaust all she had herself in her support, and we hold that that is not the law applicable in this case.

It is shown by the evidence that the necessities of this woman were such as to make it reasonable to say that she required in addition to the income of her own separate property and the income from her husband's, something out of the principal of this property. The evidence traces, as I have stated, no part of the personalty in kind, which was left by Amandar Moore, into the hands of the executor of the will of Charlotte Moore, nor into the hands of Charlotte Moore as remaining with her up to the time of her death, and we think it fair to say that she might very reasonably have expended in her support all of this personalty that was not still in her possession when she died, to-wit, the United States bond for $500.

It is further urged here on the part of the plaintiffs, that whatever property Charlotte left at the time of her death, that came to her from Amandar, is to go to the parties named in the first item of the will as remaindermen, as being entitled to the property, a life estate in which was granted to Charlotte Moore, and that no part of that could be disposed of, or in any event no part of it was disposed of by the will of Charlotte, and a somewhat troublesome question in this case is, whether Charlotte did dispose of any part of it by her will, and indeed whether she had any right to dispose of any part of it by her will.

The language is peculiar. It is easy to conceive of circumstances where the language of the will would not exactly dispose of all this property.

Having given to Charlotte a life estate in this property he says:

"If at the death of my said wife any of said property, or
enough thereof," enough for some purpose, "remains un-
disposed of, I give and devise the same as follows: Two thou-
sand dollars to be disposed of by my said wife by will or other-
wise absolutely as she may see fit." If it was to remain with
her up to her death, it is difficult to conceive of any way ex-
cept by will that she could have disposed of it. But before she
could dispose of it, as we construe this will, there must have
been enough property to have not only—the wording is pecu-
liar. "If at the death of my said wife, any of said property or
enough thereof," that is enough as we construe it to make the
following bequests; if there is enough to do the things that I
hereinafter speak of, she may dispose of $2,000 of it by will or
otherwise, not necessarily by will. "Two thousand dollars of it
to be disposed of by my said wife by will or otherwise, absolute-
ly as she may see fit; $1,000 to my daughter Emma Gorham,
now in California; $1,000 to my son Burt Moore; $1,000 to my
daughter Josephine Idlor; $500 to my grandson William Idlor."
Now, if there was $5,500 or more, he has provided for the dis-
position of $5,500. "If at the decease of my said wife, there
should not remain undisposed of by her the sum of $3,500 then
the same or what remains thereof is to be divided *pro rata* be-
tween my said daughters Emma and Josephine, my son Burt,
and grandson, William Idlor, or to their heirs respectively."

Now, as a matter of fact, there was less than $3,500 left of
this property at the death of Charlotte. There was the land,
which it is not claimed was worth that amount. It was
stated to be worth about $1,400 by somebody, but no difference
if it was worth $100 an acre, there being only the land and the
bond, there was less than $3,500. There was not enough to make
the disposition that he provided for, allowing Charlotte to dis-
pose of $2,000. Now it is true, that here would be a curious
situation if there had been $4,500. Whoever had the duty upon
him to determine what this will meant, would have to read
something into it to make it mean anything. But since that
question isn't here we need not undertake to say what would
be done, nor do we determine whether, if there had been $5,500
left, the residuary clause of the will of Charlotte would have
been a disposition of $2,000 by her. That question is not here;
there was less than $3,500. That being true, we hold that the
bond and the real estate go, under the will of Amandar Moore,

to the plaintiffs and the defendant Josephine Idlor in the share of two-sevenths to each of the three children of the testator and one-seventh to the grandchild named.

It appears in evidence, however, that the right of Josephine Idlor has been bought in by the executor, so that share will go to him as executor, whatever would otherwise have gone to Josephine. Two-sevenths to Day as executor, two-sevenths to Burt Moore, two-sevenths to Emma Gorham, and one-seventh to William Idlor.

Some other questions were discussed in the case; one was, that no allowance was made to the widow, Charlotte, for her support for one year from the time of her husband's death. No claim for such support seems ever to have been made; if it had been made, the court having original and exclusive jurisdiction in that matter has not been appealed to in this case, to-wit, the probate court, and we can not make any allowance for any support for the widow. It was urged on the part of the defendants here, that if these parties were entitled to anything, they were entitled as creditors and should have filed their claim for money with the executor. If they were claiming that Charlotte Moore in her lifetime was indebted to them, that would have been the way; but they make no claim that Charlotte Moore ever owed them anything; she did not owe them anything; she held some property in trust, she to have the use of it for her lifetime with a remainder over to these parties.

When Mr. Day became executor of her will that trust was forced upon him and he held this property in trust, and that trust has continued. No statute of limitations prevents plaintiffs from maintaining this action.

The decree may be that the real estate be sold, and of the net avails the disposition shall be made as indicated; that Day shall make disposition of the avails of this bond together with whatever accumulations there have been since the death of Charlotte oore, in the ratio already indicated. And the costs of this whole proceeding may come out of this property.

*C. W. Johnston* and *J. H. Leonard*, for plaintiffs.

*E. J. Johnson, H. C. Johnson* and *Lee Day*, for defendants.